**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| LENINE STROLLO, | : | Case No. 1:05cv0113 |
| Petitioner, | : | JUDGE KATHLEEN O'MALLEY |
| v. | : | |
| UNITED STATES OF AMERICA, | : | <u>ORDER</u> |
| Respondent. | : | |

Before the Court is a motion filed by Petitioner Lenine Strollo ("Strollo") pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence (Doc. 1). Strollo, *pro se*, argues that his trial counsel rendered constitutionally ineffective assistance by failing to communicate a plea offer to him that was more favorable than the plea agreement he ultimately entered into with the government. In support of this assertion, Strollo states in his motion that "[t]he terms of this offer are outlined in the affidavit of Paul Lynch, which is submitted herewith. (If not filed with this motion, the Lynch affidavit will be filed as soon as it is received by petitioner.)" (Doc. 1 at p. 4.) The Lynch affidavit, however, was not attached to the motion, and Strollo did not include any other supporting documents. After the government responded to Strollo's § 2255 motion, Strollo, on March 18, 2005, requested an extension of time to produce the Lynch affidavit. The Court granted an extension until May 1, 2005 to submit the affidavit or otherwise respond to the government's brief. Strollo never filed a response, and, to date, he has not submitted to this Court the Lynch affidavit or any other document supporting his

assertion. Accordingly, the Court now addresses Strollo's motion on the record currently before it. For the reasons stated below, the Court **DENIES** Strollo's motion to vacate his sentence.

**I.    BACKGROUND**

Strollo's indictment in 1998 was the result of a multi-year investigation into the activities of La Cosa Nostra ("LCN") in the Ohio Mahoning Valley, of which Strollo was a high-ranking member. The investigation produced convictions of over seventy individuals, some of whom ultimately received life sentences without the possibility of parole. The investigation also resulted in the convictions of several public officials, including Congressman James A. Traficant.

On April 1, 1998, a federal grand jury returned a sixteen-count superseding indictment charging Strollo, along with many other co-defendants, with conducting the affairs of an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) (Count 1) and filing a false tax return (Count 11), among others. As part of the charged pattern of racketeering, the indictment specifically charged Strollo with numerous acts of racketeering, including conspiracy to commit the murder of Ernie Biondillo, illegal numbers lottery, illegal gaming events, bribery, and money laundering.

On February 16, 1999, Strollo pled guilty to Counts 1 (pattern of racketeering) and 11 (false tax return) pursuant to a written plea agreement. In doing so, Strollo admitted that he was guilty of many of the charged racketeering acts, including the conspiracy to murder Ernie Biondillo. In the plea agreement, the parties agreed that Strollo's offense level under the federal sentencing guidelines was a level forty-three, because his racketeering activity involved murder. The parties also agreed that Strollo was entitled to a three-level adjustment for acceptance of responsibility, and the government promised to make a motion for an eight level downward departure to an offense level of thirty-two, if

2

Strollo cooperated in connection with the prosecution of his co-defendants and in connection with other pending and future cases.

On January 27, 2004, the government, as promised, made a motion for a downward departure of eight levels in return for Strollo's cooperation in other cases. The Court accepted the government's recommendation and sentenced Strollo to 152 months imprisonment.

On January 21, 2005, Strollo filed a motion pursuant to § 2255 to vacate his sentence, arguing that his trial counsel was constitutionally deficient for failing to communicate a plea offer that was more favorable than the one he ultimately accepted. The Court now addresses that motion.

## II.   DISCUSSION

### A.   Law

A prisoner who moves to vacate his sentence pursuant to § 2255 must demonstrate that the imposition of his sentence violates the Constitution or laws of the United States, that the court did not have jurisdiction to impose the sentence, that the sentence was excessive under the law, or that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. Under § 2255, "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)). "Relief is warranted only where a petitioner has shown 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *Griffin*, 330 F.3d at 736 (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)). The petitioner bears the burden of demonstrating that he is entitled to relief under § 2255. *Cf. Griffin*, 330 at 736 ("To warrant relief under section 2255, a petitioner must demonstrate the existence of an error of constitutional magnitude . . ."); *see also Overdear v. United States*, 212 Fed. Appx. 930, 931 (11th

Cir. 2006) ("[T]he movant has the burden of establishing that he is entitled to relief under § 2255."); *Williams v. United States*, 481 F.2d 339, 346 (2d Cir. 1973) (explaining that, in a collateral attack on a criminal conviction, it is hornbook law that "the burden of proof is on the party seeking relief.").

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test for analyzing claims of ineffective assistance of counsel. First, the petitioner must show that trial counsel's performance was not within the range of competence demanded of attorneys in criminal cases. *Id.* at 687. Second, the petitioner must show that actual prejudice resulted from the counsel's deficient performance. *Id.* In order to satisfy the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 698.

As it relates to this case, counsel's failure to communicate a plea offer, if the existence of the offer can be demonstrated, constitutes deficient performance and satisfies the first prong of the *Strickland* test. *Griffin*, 330 F.3d at 737. As to the prejudice prong, a petitioner can show prejudice in the plea offer context by demonstrating that "there is a reasonable probability the petitioner would have pleaded guilty given competent advice." *Id.* Thus, in a case where, as here, a petitioner ultimately enters into a plea agreement (rather than going to trial), but claims that his counsel failed to communicate an earlier, more favorable agreement, a petitioner must show that there is a "reasonable probability" that he would have accepted the earlier offer, and that the "result of the [offer] would have been different," i.e., more favorable.

**B.     Analysis**

　　**1.     Deficient Performance**

4

Although the failure to communicate a plea offer constitutes deficient performance, *Griffin*, 330 F.3d at 737, the Court must determine, in the first instance, whether the government ever made a plea offer to Strollo's attorneys that was not communicated to Strollo. *See Guerrero v. United States*, 383 F.3d 409, 417 (6th Cir. 2004) ("The threshold issue in this case, of course, is whether the government ever extended a plea offer to [the defendant] through [his counsel]."). The Sixth Circuit has described that question as a "purely factual issue." *Id.*

In his present motion, Strollo makes the bare assertion that his counsel failed to communicate a plea offer to him that was more favorable than the one he ultimately accepted. Although Strollo indicates that he has an affidavit from Paul Lynch that outlines the terms of the offer, he has not produced the affidavit, despite requesting and being granted an extension of time within which to do so. Indeed, it has been almost two years since Strollo has requested an extension, more than ample time to come forward with evidentiary support for his assertion. To date, he has presented none.

In response, the government submitted an affidavit from Craig Morford, the Assistant U.S. Attorney who prosecuted the underlying criminal matter. (Doc. 6-2, hereinafer "Morford Aff."). Morford states that he did not offer Strollo's attorneys any plea deal prior to seeking approval to do so in February 1999, just before Strollo entered into the plea agreement. (*Id.* at ¶¶ 5-6.) Morford also states that, as a general rule, he does not make any plea offers promising to move for a downward departure unless and until the defendant makes a proffer, which did not occur in this case until "shortly before jury selection was scheduled to begin in [the] criminal case." (*Id.* at ¶¶ 7-8.) Finally, he states in his affidavit that the promise in the plea agreement to recommend an eight level downward departure was "unusually high," and that "a departure from a life sentence to 12 1/2 years is the maximum that I was willing to recommend to the Court after the proffer." (*Id.* at ¶¶ 10-11.)

On this record, the Court concludes that there is insufficient evidence to establish that an earlier plea offer was made by the government. It is significant that Strollo references an affidavit that apparently confirms his assertion and the terms of the offer, but is not able to produce the affidavit, even given a generous extension of time to do so. Absent any supporting evidence, the Court is left with Strollo's bare assertion that the government made such an offer to his attorneys.

On the other hand, the government has submitted an affidavit that explains that approval was never sought for any plea offer other than that which the parties ultimately agreed. Significantly, Morford indicates that a departure from a life sentence to twelve and a half years was the "maximum" he was willing to recommend. Indeed, given the Court's position on plea agreements in the case to date (i.e., its earlier rejection of a plea deal to a co-defendant on grounds that the agreement called for a sentence the Court found too lenient), the U.S. Attorney's Office would have no reason to believe the Court would have accepted any recommendation for less than the 152 months Strollo ultimately received.

A petitioner bears the burden of establishing that he is entitled to relief, and, in this case, Strollo has failed to meet that burden. The Court, therefore, concludes that there is insufficient evidence to conclude that the government ever extended an earlier, more favorable plea offer to Strollo's attorneys.

The Court also does not find that resolution of this question requires an evidentiary hearing. § 2255 provides that, upon a prisoner's motion to vacate a sentence, a district court shall grant a hearing, determine the issues, and make findings of fact "[u]nless the motion and the files and records of the case conclusively show that prisoner is entitled to no relief." 28 U.S.C. § 2255. "An evidentiary hearing is usually required if the motion states a claim based on matters outside the record or events outside the courtroom." *United States v. Burrows*, 872 F.2d 915, 917 (9th Cir. 1989). That does not,

however, "imply that a movant must always be allowed to appear in a district court for a full hearing if the record does not conclusively and expressly belie his claim, no matter how vague, conclusory, or palpably incredible his allegations might be." *Machibroda v. United States*, 368 U.S. 487, 495 (1962).

In this case, the Court concludes that the resolution of Strollo's motion does not require an evidentiary hearing, and that the briefing and supporting documents (or lack thereof) conclusively show that Strollo is not entitled to relief. Significantly, this is not a case where a petitioner purports to have first hand knowledge of some evidence that supports his claim for ineffective assistance - as in a case where a petitioner claims that he personally told his attorney to file an appeal and later claims his attorney was constitutionally deficient for not doing so. In other words, the Court in this case is not required to make a credibility determination solely on the writings submitted by the parties. The evidence to support this claim is wholly outside of Strollo's personal knowledge, and the Court is left with only a bare assertion from the petitioner on one hand, and a sworn affidavit from the government on the other. In such a case, no hearing is required.

### 2. Prejudice

In addition, even assuming, *arguendo*, that Strollo can satisfy the first prong of the *Strickland* test, the government argues that he cannot prove that he would have accepted the plea offer and that the outcome would have been more favorable. In support of that assertion, the government contends that the actions of the defense team in filing motions to suppress, to strike, to search personnel files of government agents, and to seek review of the pretrial detention, indicate that Strollo would not have accepted an early plea agreement. In addition, the government argues that it has discretion to recommend downward departures, and that Strollo cannot show that the government would have done

7

so in another plea deal. Finally, the government argues that the Court makes the ultimate sentencing decision, such that Strollo cannot show with any certainty that the Court would have sentenced him any differently.

The Court finds that Strollo cannot satisfy the prejudice prong because he cannot show that any earlier plea offer, even if made, would have resulted in a more favorable resolution of this matter. The government indicates that the U.S. Attorney's Office for the Northern District of Ohio normally only recommends a maximum downward departure of six levels, and even that departure is reserved for extraordinary cooperation by the defendant. In this case, the eight level downward departure was "an unusually high recommendation." In addition, Morford states that he would not have considered recommending anything more than a departure from a life sentence down to twelve and a half years. The Court's very specific recollection of this matter, moreover, leaves it convinced that it would <u>not</u> have approved a plea agreement calling for a lesser sentence. Strollo simply cannot demonstrate that, but for his counsel's purported failure to communicate some different plea offer, the sentence imposed on him would have been any different.

### III. CONCLUSION

For the reasons stated above, Strollo's motion to vacate his sentence is **DENIED**. This case, therefore, is **DISMISSED**.

**IT IS SO ORDERED.**

                                                          s/Kathleen M. O'Malley
                                                          **KATHLEEN McDONALD O'MALLEY**
                                                          **UNITED STATES DISTRICT JUDGE**

**Dated: July 16, 2007**